UNITED STATES OF AMERICA
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

      v.                                              CASE NO. 8:07-cr-342-T-23MAP

AHMED ADELLATIF SHERIF MOHAMED
YOUSSEF SAMIR MEGAHED
_____/

**ORDER**

Media General Operations, Inc., d/b/a WFLA-TV and The Tampa Tribune ("Media General") seeks reconsideration of this Court's February 28, 2008 order ("Order"), doc. 151, denying Media General's request to copy the video of the traffic stop and subsequent questioning (Gov't ex. 1) that was entered into evidence at a suppression hearing. *See* Media General's motion for reconsideration, doc 155. Media General contends that the Order failed to consider relevant factors, is overbroad, and is based on only a speculative risk of harm to the Defendants' fair trial rights. For the reasons that follow, Media General's motion is denied.

Media General's contention that this Court failed to consider the relevant factors lacks merit. The Court listed the appropriate factors, *see* Order at 2, and found that they weigh in favor of denying Media General's request to copy the video at this sensitive time in the proceedings, with jury selection approaching. As to the factors Media General claims that the Court "fail[ed] to consider" – whether the video is sought for an illegitimate purpose, whether its release would promote the understanding of a historically significant event, and whether copying would cause administrative difficulties – the Court will make its reasoning explicit here. The Court acknowledges that Media General is not seeking the video for an illegitimate purpose, but finds that the release of the video would aid only marginally in the public's understanding of a

historically significant event. As stated in the Order, the media attended the suppression hearing, viewed the portions of the video that were played at the hearing, and freely reported on those events. Moreover, this Court granted Media General's request to copy Defendant's exhibit 7, which includes video of the Defendant's car being pulled over, the inappropriate remarks by police officers, and the interactions between the Defendants and the police leading up to and including Defendant Mohamed's consent to the search. Thus, to the extent that Media General asserts that the public should be allowed to see the "gestures" and "body language" that the Court considered in finding that Defendant Mohamed consented to the search, that portion of the video is already available.[1]

The Court's primary concern in releasing a copy of Gov't ex. 1 is that this tape does not stop with the consent to search the vehicle, but continues for more than an hour with intermittent questioning and statements by Defendant Mohamed. This footage has not been played in open court and has no relevance to the Court's ruling on the motion to suppress. The release of these statements – particularly if they were broadcast only as sound bites and not played in context – would make it even more difficult to empanel an impartial jury.

Media General calls this Court's finding that the copying of this video would adversely impact the Defendants' fair trial rights "pure speculation," arguing that there are no "empirical data or studies" to support this finding. *See* Media General's Motion at 7. However, courts have

---

[1] The questioning leading to Defendant Mohamed's consent to the search is posted on the website of tbo.com, which is affiliated with Media General. *See* http://tbo.com/video/xml/MGB1LXA89DF.html. Additionally, a transcript that covers more than twenty minutes of the video also is posted on the website. *See* http://media.tbo.com/pdf/21908usfdocs.pdf.

long acknowledged that in widely publicized cases, sensational media coverage might interfere with the defendant's right to a fair trial:

> "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). In a widely publicized case, "the right of the accused to trial by an impartial jury can be seriously threatened by the conduct of the news media prior to and during trial." Report of the Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue, 45 F.R.D. 391, 394 (1968). *Thus, it is the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the accused receives a fair, orderly trial comporting with fundamental due process.*

*See United States v. Noriega*, 917 F.2d 1543, 1548 (11th Cir. 1990).

This case has already attracted a great deal of attention from the media and the public. *See, e.g.*, Defendant Megahed's January 23, 2008 motion requesting the use of jury questionnaires (doc. 91) (and in particular, the supporting documents). Releasing another hour of videotape containing Defendant Mohamed's statements would only increase pre-trial publicity.[2] The Court emphasizes again that while it may be appropriate to release this video in its entirety at some later date, now is a particularly sensitive time in the proceedings, just before jury selection.[3]

The Court has considered whether it would be technologically feasible for the Clerk's

---

[2] Media General also claims that the Court's finding that the release of the video would impact fair trial rights is "seriously undercut[]" by the fact that Defendant Megahed took no position regarding the release of the video. However, since the video that the Court has declined to release contain the questioning and statements of Defendant Mohamed, Defendant Megahed's position has little relevance.

[3] As stated in the Order, the fact that the time for jury selection is soon approaching distinguishes this case from *United States v. Trofimoff*, 2001 WL 1644230 (M.D. Fla. 2001), upon which Media General continues to rely.

office to copy only the first portion of the video, up to and including Defendant Mohamed's consent to the search (the portion that was played in Court and was relevant to the suppression hearing), but the Court's computer support staff stated that the electronic formatting of Gov't Ex. 1 would make it difficult for the Court to copy only a portion of the video.

In sum, the Court has considered the relevant factors, and has found a real and substantial risk that the release of a copy of Gov't Ex. 1 at this sensitive time in the proceedings would adversely impact the Defendants' fair trial rights. This risk of harm is not merely hypothetical. To the extent that Media General demands "empirical data or studies" *proving* that releasing a copy of the video would adversely impact on the Defendants' fair trial rights, this Court notes that *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir. 1981),[4] rejects the position that a "trial court must have positive proof of the impossibility of assuring defendant a fair trial before access may be denied." The *Belo* court stated:

> A forecast of future difficulty is by definition uncertain, but equally uncertain is the rejection of that forecast. Speculative dismissal by an appellate court of a trial judge's admittedly uncertain but quite reasonable prognostication only compounds the problem. The informed and considered judgment of the trial judge should prevail in any choice between such equally speculative results. *It is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury.*

*Belo*, 654 F.2d at 431 (emphasis added). There is minimal harm to the public if the release of this video is delayed for several weeks or months, and a substantial risk of harm to the Defendants if it is released now. The Court has considered alternatives such as voir dire or a change of venue, but

---

[4] Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding precedent on federal courts within the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

finds that denying Media General's request to copy Gov't ex. 1 at this time is the most appropriate remedy for the reasons stated in the Order. *See Belo*, 654 F.2d at 432 (noting that the availability of other procedural devices to guarantee a defendant's fair trial rights did not make the trial court's denial of access to tapes an abuse of discretion); *see also United States v. Davis*, 904 F. Supp. 564, 569 (E.D. La. 1995) (discussing why voir dire and jury instructions to disregard prejudicial publicity may be insufficient to protect a defendant's fair trial rights, because "[i]t is difficult, if not impossible, to 'unring a bell,'" and "When one is told 'Don't think about elephants,' the immediate image in the mind is an elephant. So goes the effectiveness of instructions to disregard."); *see also* Mark R. Stabile, Free Press-Fair Trial: Can They Be Reconciled in a Highly Publicized Criminal Case, 79 Geo. L. J. 337, 343--45 (1990) (discussing the problems that come with attempting to remedy prejudicial pretrial publicity through postponement, change of venue, voir dire, or jury instructions).  Accordingly, it is hereby

ORDERED:

1. Media General's motion for reconsideration (doc. 155) is denied.

DONE AND ORDERED at Tampa, Florida on March 31, 2008.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record